1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY KING ELLERD, II, | Case No. 1:14-cv-00908-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL |
| v. | |
| CAROLYN W. COLVIN, | |
| Defendant. | |

Plaintiff Johnny King Ellerd, II ("Plaintiff") filed this action seeking judicial review of the final decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner") denying Plaintiff's application for benefits under the Social Security Act. (ECF No 1.)  All parties have consented to the jurisdiction of a United States Magistrate Judge for all purposes.  (ECF Nos. 9, 11.)

Plaintiff applied for Social Security benefits due to impairments arising from injuries to his back and neck and from arthritis.  For the reasons set forth below, Plaintiff's appeal from the final decision of the Commissioner is denied.

/ / /
/ / /
/ / /
/ / /

# I.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff applied for Supplemental Security Income benefits on March 28, 2011.  (AR 158.)  Plaintiff's application was denied on January 27, 2012.  (AR 95.)  Plaintiff requested reconsideration of the denial on February 16, 2012.  (AR 100.)  Plaintiff's application was denied upon reconsideration on July 24, 2012.  (AR 107.)  Plaintiff requested a hearing before an Administrative Law Judge on July 30, 2012.  (AR 113.)

On January 24, 2013, a hearing took place before Administrative Law Judge Christopher Larsen ("the ALJ").  (AR 34.)  On February 28, 2013, the ALJ issued a written decision and found that Plaintiff was not disabled.  (AR 13-22.)  Plaintiff requested review of the ALJ's decision on April 2, 2013.  (AR 8.)  On April 14, 2014, the Appeals Council denied Plaintiff's request for review.  (AR 1.)

### A.    Plaintiff's Hearing Testimony

Plaintiff was born on March 29, 1959 and was 53 years old at the time of the hearing.  (AR 38.)  Plaintiff is 5'11" and weighs 178 pounds.  (AR 38.)  Plaintiff is married.  (AR 39.)  Plaintiff is right handed.  (AR 39.)  Plaintiff does not have a driver's license.  (AR 39.)

Plaintiff received a GED.  (AR 40.)  Plaintiff has no vocational training or college credit.  (AR 40.)  Plaintiff did receive military training as a member of the Navy from 1977 to 1981.  (AR 40.)  Plaintiff was honorably discharged.  (AR 40.)

Plaintiff last worked in 2003 for a flooring/carpet service and performing maintenance in an apartment complex.  (AR 41.)  Plaintiff worked part time (20-30 hours a week and 2-3 days a week) for the flooring/carpet service.  (AR 41.)  Plaintiff installed carpet and lifted weight as heavy as 40 pounds.  (AR 41.)  Plaintiff stopped working because he was unable to stay on his knees or stoop for long periods of time.  (AR 41.)  Plaintiff also performed maintenance in the apartment complex on an on-call basis.  (AR 42.)  Plaintiff typically responded to calls 2-3 days a week and the jobs would last anywhere from an hour to a couple of days.  (AR 42.)

---

[1] Citations to the Social Security Administrative Transcript will be designated as "AR" (administrative record).  Page numbers will refer to the page numbers as stamped and indexed in the lodged transcript.  (See ECF No. 12.)

1    Plaintiff worked as a ride operator at a local carnival in 1998.  (AR 42.)  Plaintiff worked
2    from February until around September every day from 8-10 hours per day.  (AR 42.)  Plaintiff
3    lifted weights anywhere between 100 to 150 pounds.  (AR 43.)  Plaintiff was in charge of the
4    ride and had to perform maintenance on it.  (AR 43.)

5    Plaintiff worked trimming roses in 1999 for a few months before he got injured on the
6    job.  (AR 43.)  Plaintiff worked full-time.  (AR 43.)  The heaviest weight Plaintiff lifted was
7    around 10 pounds.  (AR 43.)

8    Plaintiff testified that he has difficulty standing for over 45 minutes to an hour at a time.
9    (AR 44.)  Plaintiff can only sit in an upright position for 30 to 45 minutes before having pain.
10   (AR 44.)  Plaintiff has spasms in his lower back and his left leg has "tendencies to let go."  (AR
11   44.)  Plaintiff's left hip also locks.  (AR 44.)  Plaintiff has a tendency to drop things from time to
12   time.  (AR 44.)  Plaintiff has severe headaches if he has to concentrate for a long period of time.
13   (AR 45.)  Plaintiff can concentrate for 45 minutes to an hour before having to stop.  (AR 54.)

14   Plaintiff takes marijuana for pain and has had a state medical card for marijuana since
15   March 2012.  (AR 45.)  Plaintiff reported that, without medication, his pain is six to seven on a
16   scale of one to ten.  (AR 46.)  With medication, his pain is four to five.  (AR 46.)  Plaintiff has
17   had back pain for about four years.  (AR 46.)  Plaintiff reported that his back pain was from
18   "doing dumb things in my life" and from a work related injury.  (AR 46.)  Plaintiff also takes
19   Vicodin for his pain.  (AR 48.)  Plaintiff reported side effects from his pain medication including
20   stomach sickness and dizziness.  (AR 48.)  Plaintiff also takes medication for hypertension.  (AR
21   48.)

22   Plaintiff reported that he is in a recliner or in bed from six to eight hours a day.  (AR 47.)

23   Plaintiff uses a walker.  (AR 48.)  Plaintiff stated that his doctor prescribed it two years
24   ago.  (AR 49.)  Plaintiff uses the walker when he goes outside and walks on his own inside his
25   house.  (AR 49.)  Plaintiff has difficulty bending over, stooping, climbing stairs and reaching
26   overhead.  (AR 49-50.)  Plaintiff cannot squat, kneel, climb a ladder, or walk on uneven surfaces
27   without his walker.  (AR 49-50.)  Plaintiff can reach out in front of him.  (AR 50.)  Plaintiff can
28   dress and bathe, but has trouble with his pants, shoes, and socks.  (AR 50-51.)

1    Plaintiff tried physical therapy but it made his condition worse.  (AR 51.)  Plaintiff uses a

2  TENS unit 3-4 times a day, which helps at times.  (AR 51.)

3    Plaintiff has pain and weakness in his left wrist.  (AR 52.)  Plaintiff stated that he could

4  lift five to ten pounds with his left hand, but would have difficulty holding on to anything with

5  his left hand.  (AR 52.)  Plaintiff can lift 50 pounds with his right hand.  (AR 54.)  Plaintiff tries

6  to walk around his block with his walker at least twice a day.  (AR 53.)

7    Plaintiff attends church twice a week at the house he lives in.  (AR 55.)  Plaintiff stands

8  up and down throughout the service.  (AR 55.) Plaintiff does not do anything else socially.  (AR

9  55.)  Plaintiff does not help around the house, do yard work, or have any hobbies or interests.

10  (AR 55.)

11    **B.    VE Testimony**

12    Stephen Schmidt testified at the hearing before the ALJ as a vocational expert ("the

13  VE").  (AR 56.)  The VE characterized Plaintiff's prior work as "floor layer (medium, SVP 6),

14  maintenance repairer (medium, SVP 7), box maker (medium, SVP 2), maintenance mechanic

15  (medium, SVP 7), ride operator (light, SVP 3), and landscape laborer (heavy-but performed at

16  light, SVP 2).  (AR 57.)

17    The ALJ provided the VE with the following first set of hypothetical limitations:

18    • Same age, education, and work experience as Plaintiff;

19    • Can perform light physical exertion;

20    • Can only occasionally push or pull with the lower left extremity;

21    • Can never climb ladders, ropes, or scaffolds,

22    • Can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; and

23    • Must avoid moderate exposure to vibration and to hazards.

24  (AR 57.)   The VE testified that a person with such hypothetical limitations could perform

25  Plaintiff's prior work as a ride operator or work as a cashier, electronics worker, or packer.  (AR

26  57-58.)

27    The ALJ provided the VE with the following second set of hypothetical limitations:

28    • Same age, education, and work experience as Plaintiff;

1    • Can lift and carry 20 pounds occasionally, 10 pounds frequently;

2    • Can stand and walk a total of 2-3 hours in an eight hour day with an assistive device;

3    • Can sit for 2-3 hours in an eight hour day; and

4    • Must lie down or be off his feet a total of 2-3 hours in an eight hour day.

5    (AR 58.)  The VE testified that such a person could not work.  (AR 58.)

6    The ALJ provided the VE with a third set of hypothetical limitations, which were

7    identical to the first but with an added limitation of only "frequent" reaching with the right

8    dominant upper extremity.  (AR 60.)  The VE testified that such a person could work as an

9    information clerk, parking attendant, or office helper.  (AR 60.)

10   **C.    Medical Records**

11   The administrative record includes medical records from the Veterans Administration and

12   the Department of Veterans Affairs.  (AR 276-413, 463-489, 492-534.)   The administrative

13   record also includes an October 30, 2011 Case Analysis authored by Dr. Kenneth Glass, M.D.

14   (AR 414), a January 6, 2012 comprehensive internal medicine evaluation authored by Dr. Roger

15   Wagner, M.D. (AR 415-421), a January 19, 2012 Physical Residual Functional Capacity

16   Assessment authored by Dr. Jacinto DeBorja, M.D. (AR 422-429), a July 24, 2012 Case

17   Analysis authored by Dr. S. Reddy, M.D. (AR 490-491).

18   **D.    The ALJ's Findings**

19   The ALJ made the following findings of fact and conclusions of law:

20   • Plaintiff has not engaged in substantial gainful activity since March 28, 2011, the
21     application date;

22   • Plaintiff has the following severe impairments: arthritis and degenerative joint disease;

23   • Plaintiff has no impairment or combination of impairments that meets or medically
24     equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P,
25     Appendix 1;

26   • Plaintiff has the residual functional capacity to lift and carry 20 pounds occasionally, and
27     10 pounds frequently; stand and walk 6 hours cumulatively, and sit 6 hours total in an 8-
28     hour workday; can occasionally push or pull with the lower left extremity; never climb

ladders, ropers, or scaffolds; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; can frequently reach with the right dominant upper extremity; and must avoid even moderate exposure to vibration and to hazards.

- Plaintiff cannot perform any past relevant work;
- Plaintiff was born on March 29, 1959 and was 51 years old, and therefore "closely approaching advanced age" under Social Security regulations, on the date he applied for supplemental security income;
- Plaintiff has at least a high school education and can communicate in English;
- Transferability of job skills is not material to the determination of disability because the framework of the Medical-Vocational Rules supports a finding that Plaintiff is "not disabled" regardless of transferable job skills;
- Plaintiff's age, education, work experience, and residual functional capacity allow him to perform jobs that exit in significant numbers in the national economy; and
- Plaintiff has not been under a disability, as defined in the Social Security Act, since March 28, 2011, the date he applied for supplemental security income.

(AR 15-22.)

## II.

## LEGAL STANDARDS FOR JUDICIAL REVIEW OF SOCIAL SECURITY DETERMINATIONS

An individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  The Court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means more than a scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Id. (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  "[A] reviewing court must consider the entire record as a

1   whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill,

2   698 F.3d at 1159 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).

3   However, it is not this Court's function to second guess the ALJ's conclusions and substitute the

4   Court's judgment for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)

5   ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's

6   conclusion that must be upheld.")

7                                              **III.**

8                              **DISCUSSION AND ANALYSIS**

9        Plaintiff raises five issues in this appeal.  First, Plaintiff argues that the ALJ erred by

10  failing to inquire as to whether Plaintiff received a VA disability rating.  Second, Plaintiff argues

11  that the ALJ erred in rejecting the opinions of Plaintiff's treating physicians.  Third, Plaintiff

12  argues that the ALJ erred in finding Plaintiff's subjective complaints to be less than fully

13  credible.  Fourth, Plaintiff argues that the ALJ erred in failing to include Plaintiff's mental

14  impairments and left wrist/hand pain and weakness in the residual functional capacity

15  assessment.  Fifth, Plaintiff argues that the ALJ erred by providing an incomplete hypothetical to

16  the VE.

17       **A.    The ALJ Did Not Err by Failing to Inquire as to Whether Plaintiff Received
                 a VA Disability Rating**
18

19       Plaintiff argues that the ALJ erred by failing to inquire whether a VA disability rating

20  exists for Plaintiff.  As an initial matter, it appears to be unclear whether a VA disability rating

21  exists for Plaintiff.  Plaintiff merely argues that, since he has treatment records from the VA and

22  because Plaintiff's back was injured when he was in the Navy, a VA disability rating "likely

23  existed."  Plaintiff's reply states that there is "no evidence [that] Mr. Ellerd's VA disability

24  rating was submitted to the Social Security Administration" and "[i]t was apparent from the

25  record ... that a disability rating likely existed."  (Pl.'s Reply Brief 4:7-10.)

26       Plaintiff is in the best position to know whether a VA disability rating exists and whether

27  the content of that VA disability rating would have affected the Commissioner's decision at the

28  administrative level.  It would be a trivial matter for Plaintiff's counsel to ask her client whether

                                               7

he receives any disability compensation from the VA and about any associated findings by the VA regarding Plaintiff's disability.  Instead of affirmatively investigating the issue, however, Plaintiff has chosen to remain willfully ignorant of whether a VA disability rating exists and whether it would help his case.  This strikes the Court as an exceptionally wasteful strategy and admonishes Plaintiff's counsel for adopting a strategy that has a strong possibility of wasting time and resources of the Court and the Commissioner without providing much, if any, benefit to Plaintiff.  If Plaintiff or his counsel had inquired into the issue, it could have saved this Court and the Commissioner time and resources looking into an issue that may quite possibly be inconsequential—the VA disability rating may not exist or may not have had any impact on the Commissioner's final decision.  In the future, the Court expects Plaintiff's counsel to do a more thorough investigation of the facts before raising an issue that may end up being a waste of time for the Court and the Commissioner.

Turning to the issue at hand, a VA disability rating is entitled to evidentiary weight in a Social Security hearing.  McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002).  "[A]n ALJ must ordinarily give great weight to a VA determination of disability."  Id.  "[T]he ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record."  Id.

In McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2010), the Ninth Circuit held that the ALJ erred when the administrative record suggested a likelihood that the claimant had a disability rating, but the ALJ failed to inquire as to one.  In McLeod, the Court recognized that the ALJ has a duty to conduct a full and fair hearing, and the ALJ must be "especially diligent" in fulfilling their duty to develop the record where the claimant is unrepresented or only has a lay representative.  Id. at 885.  The Court found that the ALJ did not fulfill the duty to develop the record because the facts in that case strongly suggested that the claimant had a disability rating.

In this case, the administrative record includes references indicating that Plaintiff injured his back while in the Navy.  (See AR 182 ("He mentioned that he has fallen down 3 decks and hurt his back while in the NAVY."), 335 ("Reports fall in 1980 from 3 decks with progressive back and L LE pain since."), 477 ("Patient states that while he was in the service he was carrying

a heavy barrel down the stairs on a ship and fell.").)  Plaintiff argues that the evidence of this injury should have triggered a duty on the part of the ALJ to inquire about the possibility that Plaintiff received a disability rating from the VA under McLeod.

However, the facts in McLeod are distinguishable from the facts of this case.  In McLeod, the claimant was represented by a lay representative, triggering a heightened duty on the ALJ's part to develop the record.  McLeod, 640 F.3d at 885.  Here, Plaintiff was represented by an attorney at the hearing before the ALJ.  In McLeod, the existence of a VA disability rating was supported by the fact that the claimant testified that he received a non-service-connected pension based upon unemployability from the VA, and when the ALJ asked the claimant whether he had a VA disability rating, the claimant stated that he did not know.  In contrast, there is no evidence that Plaintiff receives a non-service-connected pension based upon unemployability from the VA and Plaintiff did not provide any testimony regarding a VA disability rating.[2]  In fact, Plaintiff worked several years after his discharge, including work that involved high physical exertion, suggesting that Plaintiff did not receive a disability rating from the VA.  Significantly, the record indicates that Plaintiff's injury occurred in 1980 and Plaintiff worked for periods of time afterwards, including work in 2000-2003 installing carpet, which involved lifting 40 pounds of weight (AR 41), and work in 1998 as a ride operator which involved lifting anywhere between 100-150 pounds (AR 42-43).

Furthermore, Plaintiff's medical records indicate that a more recent incident caused Plaintiff's back problems:

> Patient states that while he was in the service he was carrying a heavy barrel down the stairs on a ship and fell.  That was the first time that he injured his back.  Then 13 years ago he fell while at work at Jack in the Box and re-injured his back and was sent to a

---

[2] Plaintiff's reply states:

> Similarly, Defendant's claim that there was "no indication whatsoever that Plaintiff was receiving a [VA] pension" is nonsense.  [Citation.]  As noted above, the record is replete with references that indicate Mr. Ellerd was in the Service and received a pension.

(Pl.'s Reply Brief 3:1-3.)  Plaintiff's reference, "[a]s noted above," points to nothing, as there is nothing "above" that section of the reply brief discussing a pension.  The Court's own review of the record revealed no references to any pension.

1    chiropractor.  Since that time he has had back problems increasing
2    in frequency and intensity.

3    (AR 477.)

4        Based upon the totality of evidence in the record, the Court finds that the ALJ did not err
5    in developing the record and was not under a duty to proactively inquire about the possibility that
6    Plaintiff had a disability rating from the VA.  In McLeod, an ambiguity existed in the record
7    when the ALJ asked the claimant if he had a VA disability rating and the claimant stated that he
8    did not know.  No such ambiguity exists in the record in this case.  Further, the Court notes that
9    Plaintiff was represented by an attorney at the hearing before the ALJ.  As noted above, the
10   ALJ's duty to develop the record is not heightened in cases involving claimants represented by
11   attorneys.  In fact, in cases involving attorney represented claimants, claimants must raise their
12   issues at their administrative hearings in order to preserve them on appeal.  Meanel v. Apfel, 172
13   F.3d 1111, 1115 (9th Cir. 1999).  Allowing Plaintiff to hold back the issue at the administrative
14   level, then raise the issue for the first time on appeal to this Court to secure a remand would
15   create a perverse incentive for Social Security attorneys to sandbag at the administrative level
16   and save their best arguments on appeal, where they can seek attorneys' fees for the unnecessary
17   work performed at the district court level.  Permitting attorneys to reap the rewards of such a
18   strategy would prejudice claimants, who would be deprived of benefits during the pendency of
19   the appeal, and would waste time and resources of the Court and the Commissioner.

20       Based upon the foregoing, the Court finds that the ALJ did not err by failing to inquire
21   about the possibility that Plaintiff received a disability rating from the VA.

22   **B.    The ALJ Did Not Err In His Assessment of the Opinions of the Treating
             Physicians**
23

24       Plaintiff argues that the ALJ erred in rejecting the opinions of his treating physicians.
25   "Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who
26   treat the claimant (treating physicians); (2) those who examine but do not treat the claimant
27   (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining
28   physicians)."  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  "As a general rule, more

1   weight should be given to the opinion of a treating source than to the opinion of doctors who do

2   not treat the claimant."   Id. (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)).   At

3   least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected

4   only for "clear and convincing" reasons."   Id. (citing Baxter v. Sullivan, 923 F.2d 1391, 1396

5   (9th Cir.1991)).   Even if the treating doctor's opinion is contradicted by another doctor, the

6   Commissioner may not reject this opinion without providing "specific and legitimate reasons"

7   supported by substantial evidence in the record for so doing.   Id. (citing Murray v. Heckler, 722

8   F.2d 499, 502 (9th Cir. 1983)).

9       An unknown physician/psychologist[3] from the Department of Veterans Affairs filled out

10   a form for Plaintiff pertaining to Plaintiff's eligibility for general relief.   (AR 306-307.)   In

11   response to the form question, "[d]oes the patient have a physical or mental incapacity that

12   prevents or substantially reduces their ability to engage in work, training, and/or provide

13   necessary care for their child(ren)?" the doctor checked the box for "Yes."   (AR 306.)   When

14   asked how Plaintiff's medical condition reduces his ability to work, the doctor wrote: "arthritis

15   [illegible] multiple joint pain [illegible] limited due to pain in hands, back, [illegible], ankle."

16   (AR 306.)   In response to the question "[a]re they able to work?" the doctor checked the box for

17   "No."   (AR 306.)   In response the question "[e]xpected duration:" the doctor checked the box for

18   "Temporary" and indicated that Plaintiff could return to work in 12 months.   (AR 307.)   The

19   form is dated March 16, 2011.   (AR 307.)

20       The ALJ noted that it was unclear whether this form came from a medical doctor because

21   the signature was illegible and the person who signed the document did not include any

22   credentials, such as "M.D." in the signature.   (AR 18.)   The ALJ also noted that a finding on the

23   ultimate question of disability is an issue specifically reserved to the Commissioner and the

24   anonymous doctor's opinion is not binding on the ALJ.   (AR 18.)   The ALJ gave the form little

25   weight because "it is inconsistent with the evidence, including diagnostic images showing only

26   mild degenerative disc disease and no nerve root damage," "[i]t is ... unclear whether the person

27

28   _____
    [3] The signature on the form is illegible.

is a medical doctor," "the medical evidence is absent[sic] any progress notes from this person and the evidence of record is absent[sic] any additional documentation of his or her credentials," and "given the lack of objective support, this opinion apparently relied quite heavily on the subjective report of symptoms and limitations provided by Mr. Ellerd, and seems uncritically to accept as true most, if not all, of what he reported."  (AR 18.)

"[A]n ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings."  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).  The Court finds that the ALJ did not err in rejecting the March 16, 2011 report because it was brief, conclusory, and inadequately supported by clinical findings.  The report contains nothing other than conclusions.  There are no citations or references to any reports, tests or Plaintiff's medical record.  Since it is unclear who authored the report, it is unclear what records the author reviewed or had access to review.  The report contains no explanation supporting any of the conclusions.  Accordingly, the report was properly given little weight by the ALJ.

Plaintiff further argues that the ALJ erred in rejecting the opinions of Dr. Amadi and Dr. Gu.  This argument fails because the ALJ did not reject any opinions of Dr. Amadi and Dr. Gu because the record does not include any opinions from Dr. Amadi or Dr. Gu concerning Plaintiff's residual functional capacity.

Based upon the foregoing, the Court finds that the ALJ did not err in his assessment of the medical record.

### C.     The ALJ Did Not Err in His Assessment of Plaintiff's Credibility

Plaintiff argues that the ALJ erred in finding Plaintiff to be less than credible.  "Under the Cotton test, a claimant who alleges disability based on subjective symptoms 'must produce objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged....""  Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991)).  "Once a claimant meets the Cotton test and there is no affirmative evidence suggesting she is malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."  Id. at 1283-84 (citing

1  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993)).

2      "To determine whether the claimant's testimony regarding the severity of her symptoms

3  is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation,

4  such as the claimant's reputation for lying, prior inconsistent statements concerning the

5  symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or

6  inadequately explained failure to seek treatment or to follow a prescribed course of treatment;

7  and (3) the claimant's daily activities." Smolen, 80 F.3d at 1284.

8      With respect to Plaintiff's credibility, the ALJ stated:

9          Mr. Ellerd described daily activities inconsistent with his
           complaints of disabling symptoms and limitations.  At one point or
10         another in the record (either in forms completed in connection with
           the application and appeal, in medical reports or records, or in his
11         testimony), he has reported the following daily activities: the
           ability to dress, bathe, shop, cook, exercise and do light yard work
12         (Exhibit 3F, p. 1).  He also testified he visits friends.

13         Mr. Ellerd also appeared at the hearing using a walker.  He stated
           he had used it for the last two years.  However, the medical
14         evidence of record does not support this statement and during Dr.
           Wagner's examination, Mr. Ellerd did not use an assistive device
15         of any kind (Exhibit 3F, p. 1).

16         Additionally, Mr. Ellerd's subjective complaints are more severe
           than the objective findings.  For example, he testified he was
17         unable to stoop, bend at the waist, or kneel.  However, Dr. Wagner
           reported Mr. Ellerd could get on and off the exam table and take on
18         and off his own shoes with some discomfort (Exhibit 3F, p. 1).
           Mr. Ellerd's credibility is further undermined by the diagnostic and
19         other objective medical evidence, which conspicuously fails to
           show a physiological basis for the extreme pain and limitation
20         alleged (Exhibits 3F, pp. 5-8; 8F, p. 4-5).

21         I also considered Mr. Ellerd's work history in assessing his
           credibility in accordance with the Regulations (20 CFR 416.929).
22         The evidence of record raises a question as to whether his
           unemployment since the alleged onset of disability was actually
23         due to his medical condition.  A review of his work history shows
           that he worked only sporadically before the alleged disability onset
24         date, which raises a question as to whether his continuing
           unemployment is actually due to medical impairments (Exhibits
25         6D; 7D; 7E).

26  (AR 19-20.)

27  / / /

28  / / /

1.   <u>Daily Activities</u>

As an initial matter, the Court notes that the ALJ cited "Exhibit 3F, p. 1" as supporting Plaintiff's reported daily activities.  (AR 19.)  However, Exhibit 3F is a medical record that does not appear to have any reference to Plaintiff's reported daily activities.  (<u>See</u> AR 309.)

Plaintiff did testify to certain daily activities at the hearing before the ALJ (AR 38-55) and submitted a "Function Report" dated June 11, 2011 (AR 229-236.)  At the hearing, Plaintiff stated that he is either in a recliner or in bed for 6-8 hours a day.  (AR 47.)  He stated that he can dress and bathe, but has trouble with his pants, shoes, and socks.  (AR 50-51.)  Plaintiff tries to walk around his block with his walker at least twice a day.  (AR 53.)  Plaintiff attends church twice a week at the house he lives in.  (AR 55.)  Plaintiff does not do anything else socially.  (AR 55.)  Plaintiff does not help around the house, do yard work, or have any hobbies or interests. (AR 55.)

In his Function Report, Plaintiff wrote that he generally wakes up, has breakfast, does therapy at home, takes care of his personal business and stays off his feet as much as possible. (AR 229.)  Plaintiff reported problems dressing, walking places, lifting things, bending over, and standing.  (AR 230.)  Plaintiff sometimes helps his wife prepare meals.  (AR 231.)  Plaintiff wrote that he sometimes clears and waters the lawn.  (AR 231.)  Plaintiff shops every week for about half an hour for food and personal things.  (AR 232.)  Plaintiff reported going to church "and outings" once or twice a week.  (AR 233.)

None of Plaintiff's reported activities are necessarily inconsistent with Plaintiff's residual functional capacity or Plaintiff's own testimony regarding his limitations.  Plaintiff's reported activities were rather limited.  With respect to exercise, Plaintiff only testified that he tries to walk 3-4 blocks a day for exercise, which is not inconsistent with his other testimony in light of his testimony that he uses a walker during his walks and breaks up his exercise into two walks per day.  Plaintiff's yard work is limited to "clearing" the yard and watering the yard, neither activity being inconsistent with his subjective complaints.

Based upon the foregoing, the Court finds that Plaintiff's reported daily activities were not a clear and convincing reason to reject Plaintiff's testimony.  However, for the reasons set

1    forth below, any error by the ALJ was harmless because the ALJ cited other clear and

2    convincing reasons to question Plaintiff's credibility.  See Batson v. Commissioner of Social

3    Security Administration, 359 F.3d 1190, 1195-97 (9th Cir. 2004) (harmless error where ALJ

4    erred in one reason for discrediting claimant's testimony, but provided other record-supported

5    reasons for discrediting claimant's testimony).

6            2.    Plaintiff's Use of a Walker

7            The ALJ found that Plaintiff's testimony regarding the need for a walker was inconsistent

8    with the record because the medical record did not indicate that Plaintiff used a walker and

9    Plaintiff did not use a walker during his consultative examination.  The ALJ again cited "Exhibit

10   3F, p. 1" in support of his findings, but this portion of the administrative record does not appear

11   to be relevant to the issue.

12           The medical record indicates that a "Prosthetics Request" was made for "Rollator" device

13   at some point in time, supporting Plaintiff's testimony that he was prescribed a walker.  (AR

14   326.)  Plaintiff did receive a comprehensive internal medicine evaluation on January 6, 2012 by

15   Dr. Roger Wagner, M.D., and Dr. Wagner noted that Plaintiff did not use an assistive device at

16   the examination.  (AR 417.)  Dr. Wagner noted that Plaintiff "has good walking tolerance" and

17   was "able to move around to get on and off the exam table."  (AR 418.)  Dr. Wagner further

18   noted that Plaintiff complained of knee pain, but "the knee exams today were quite benign" and

19   "[w]hen first standing up walking he does get up slightly slowly, takes first step or two favoring

20   that knee, but then it appears to do better."  (AR 418.)

21           The Court finds that the ALJ cited clear and convincing reasons to discredit Plaintiff's

22   testimony regarding the use of a walker.  Plaintiff testified that he uses his walker whenever he

23   leaves the house (AR 49), yet the medical record indicates that he went to his consultative

24   examination without needing the walker and the doctor indicated that his demeanor at the

25   examination did not suggest that Plaintiff needed a walker.  Accordingly, the Court finds that the

26   ALJ's findings were supported by clear and convincing evidence.

27   ///

28   ///

3.     Plaintiff's Subjective Complaints vs. the Objective Findings

The ALJ found that Plaintiff's subjective complaints were more severe than the objective findings.  Specifically, the ALJ noted that Plaintiff testified that he could not stoop, bend at the waist, or kneel, yet at the consultative examination with Dr. Wagner, Plaintiff could get on and off the exam table and take off and put on his shoes, albeit with some discomfort.

Plaintiff never testified that he absolutely could not stoop or bend—Plaintiff testified that he had difficulty doing those things.  (AR 49-50.)  However, Dr. Wagner's notes state that Plaintiff "was very easily able to bend over at the waist, take off shoes and socks, put them back on...."  (AR 416.)  In contrast, at the hearing before the ALJ, Plaintiff testified that he had difficulty bending over:

> Q  Now, if you're standing and you drop something on the ground,
> can you bend over and pick it up and get back up?
> A  Not with ease?

(AR 49.)  Accordingly, the Court finds that the ALJ did not err in determining that Plaintiff's testimony was inconsistent with Dr. Wagner's observations.

The ALJ further discredited Plaintiff's complaints because there was no indication in the medical record of any physiological basis for Plaintiff's pain and limitations.  To the extent that this reasoning was erroneous, any error by the ALJ was harmless, since the ALJ cited other clear and convincing reasons to discredit Plaintiff.[4]  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195-97 (9th Cir. 2004) (harmless error where ALJ erred in one reason for discrediting claimant's testimony, but provided other record-supported reasons for discrediting claimant's testimony).

4.     Plaintiff's Work History

The ALJ discredited Plaintiff's testimony because of Plaintiff's sporadic work history.  Plaintiff's earnings report showed the following work history: 1990 ($7,221.94), 1991 ($3,562.66), 1992 ($211.94), 1993 ($0), 1994 ($0), 1995 ($0), 1996 ($666.19), 1997 ($48.00),

---

[4] It is unclear if the ALJ committed any error, since Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991), only prohibits an ALJ from discrediting a claimant solely because of a lack of objective medical evidence to fully corroborate the alleged severity of pain, where the claimant produces objective medical evidence of an underlying impairment.  The ALJ did not rely solely on the lack of objective medical evidence corroborating the severity of Plaintiff's pain.

1   1998 ($5,839.14), 1999 ($1,860.76), 2000 ($8,733.76), 2001 ($3,563.53), 2002 ($1,088,75),

2   2003 ($10,294.79), and no earnings from 2004 through 2011.  (AR 179.)

3        A sporadic work history may show that a claimant has little propensity to work and may

4   negatively affect a claimant's credibility regarding their ability to work.  See Thomas v.

5   Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).  At the same time, the Ninth Circuit also recognizes

6   that an adverse credibility determination is not warranted where a claimant tries to work for a

7   short period of time, but fails because of his impairments.  Lingenfelter v. Astrue, 504 F.3d 1028,

8   1038 (9th Cir. 2007).  Such circumstances may support allegations of disabling pain and the

9   attempt at work may have been due to extreme economic necessity.  Id.

10       The Court finds that Plaintiff's work history supports the adverse credibility finding made

11  by the ALJ.  Plaintiff's work history does not show a brief attempt at work which only failed as a

12  result of Plaintiff's impairments.  On the contrary, Plaintiff worked a physically demanding job

13  in 1998 every day for 8-10 hours a day from February through September.  (AR 42.)  The job

14  involved lifting anywhere between 100 to 150 pounds.  (AR 43.)  There is no indication that

15  Plaintiff "failed" at that job due to his impairments.  Plaintiff indicated that the job was seasonal

16  and it appears Plaintiff worked the entire season.  Yet, Plaintiff's sporadic work history shows an

17  unexplained three year unemployment period from 1993 through 1995—prior to the period

18  where Plaintiff worked as a ride operator in 1998 lifting 100-150 pound weight.  The record

19  suggests that Plaintiff's limitations did not become an issue until 1999, when he suffered a work

20  related injury.  (See AR 43, 477.)  Thus, Plaintiff's sporadic work history prior to 1999

21  demonstrates that Plaintiff had little propensity to work.  The ALJ did not err in making an

22  adverse credibility determination based upon Plaintiff's sporadic work history.

23      **D.**    **The ALJ Did Not Err in His Assessment of Plaintiff's Residual Functional**
24                 **Capacity**

25       Plaintiff argues that the ALJ erred by failing to consider all of Plaintiff's limitations in

26  determining Plaintiff's residual functional capacity.  Specifically, Plaintiff argues that the ALJ

27  failed to include Plaintiff's depression, adjustment disorder, and left wrist/hand pain and

28  weakness.

1   There is no indication that the ALJ failed to consider these limitations in determining

2   Plaintiff's residual functional capacity.  In assessing Plaintiff's RFC, the ALJ considered all of

3   the relevant medical reports in the administrative record, including an October 30, 2011 Case

4   Analysis authored by Dr. Kenneth Glass, M.D. (AR 414), a January 6, 2012 comprehensive

5   internal medicine evaluation authored by Dr. Roger Wagner, M.D. (AR 415-421), a January 19,

6   2012 Physical Residual Functional Capacity Assessment authored by Dr. Jacinto DeBorja, M.D.

7   (AR 422-429), and a July 24, 2012 Case Analysis authored by Dr. S. Reddy, M.D. (AR 490-

8   491).  The ALJ determined that there was no evidence that Plaintiff's depression caused more

9   than a "mild" limitation in any functional area.  (AR 15.)  The ALJ's RFC assessment includes

10  limitations which presumably arise from Plaintiff's left wrist/hand pain and weakness, such as

11  Plaintiff's lift/carry limitations.

12  Plaintiff does not cite any evidence in the record which rebuts the ALJ's findings with

13  respect to Plaintiff's RFC.  Accordingly, the Court finds that the ALJ did not err in his

14  assessment of Plaintiff's RFC.

15  **E.   The ALJ Did Not Err in His Assessment of the VE's Testimony**

16  Plaintiff argues that the ALJ erred by providing the VE with an incomplete hypothetical.

17  Plaintiff argues that, since the ALJ did not consider all of Plaintiff's limitations in determination

18  Plaintiff's RFC, the hypothetical presented to the VE was incomplete.  However, the Court finds

19  that the ALJ did consider all of Plaintiff's limitations in determining Plaintiff's RFC.  Therefore,

20  there is no indication that the hypothetical presented to the VE was incomplete.  Accordingly, the

21  Court finds that the ALJ did not err in his assessment of the VE's testimony.

22  **IV.**

23  **CONCLUSION AND ORDER**

24  Based upon the foregoing, the Court finds that the ALJ's decision was supported by

25  substantial evidence.

26  Accordingly, it is HEREBY ORDERED that:

27  1.     Plaintiff's appeal from the administrative decision of the Commissioner is

28         DENIED;

1      2.      JUDGMENT is entered in favor of Defendant Commissioner of Social Security

2           and against Plaintiff Johnny King Ellerd, II; and

3      3.      The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **September 17, 2015**

UNITED STATES MAGISTRATE JUDGE